Argued and submitted August 21, reversed and remanded to the Board with instructions to reinstate the order of the referee October 26, 1981

In the Matter of the Compensation
of James P. Lavin, Claimant.

LAVIN,
*Petitioner,*
*v.*
ROSEBURG LUMBER COMPANY,
*Respondent.*

(No. 79-7425, CA A20670)

635 P2d 378

Jerome F. Bischoff, and Bishoff, Murray & Strooband, Eugene, filed the brief for petitioner.

Brian L. Pocock, Eugene, argued the cause for respondent. With him on the brief was Cowling, Heysell & Pocock, Eugene.

Before Gillette, Presiding Judge, and Roberts and Young, Judges.

GILLETTE, P. J.

## GILLETTE, P. J.

The issue in this workers' compensation case is whether claimant's foot condition is compensable. The referee found that claimant's work was a material, contributing factor to his condition and ordered acceptance of his claim. The Board reversed the referee's order. We reverse.

Claimant is 31 years old and has worked for respondent since 1973. When he was about 10 or 11 years old, he stepped on a nail and developed osteomyelitis, an inflammation or infection of the bone, in his right foot. When he was later in the Navy, he was diagnosed to have degenerative arthritis in his foot. This condition apparently developed from the osteomyelitis, and as a result, the Navy discharged claimant with a 10 percent disability. He explained that the Navy discharged him because it believed that the steel decks on which he had to run aggravated his condition.

Claimant then worked as a steel cutter for three years. He felt well during that time, although his foot would stiffen on occasion. In 1972, Dr. Donahoo examined him. Donahoo's report states that claimant has had chronic foot problems since he was a child. It indicates that claimant's foot bothers him in the morning when he first gets up and at night after a hard day, but that he has no particular pain once he is up and working. Donahoo attributed claimant's difficulties to talonavicular arthritic changes in his foot. Donahoo prescribed medication and a steel-reinforced arch support to alleviate claimant's problem. He stated that claimant would eventually have to undergo a fusion "should he become incapacitated." Donahoo did not indicate whether he thought claimant would become incapacitated in the future.

Claimant testified that after he started to work for respondent, his foot steadily got worse. His job required him to stand on a concrete floor most of the day. After a few years, wooden slats were put down over the concrete; claimant testified that standing then became somewhat easier. He also indicated that when he is out all day and active, as when hunting or fishing, his foot bothers him more.

Soon after he began working at Roseburg Lumber, claimant sought treatment, including physical therapy,

every two to three months for the pain in his foot. In November, 1979, a fusion was performed on his right talonavicular joint. In a letter to claimant's attorney, the surgeon, Dr. Johnson, stated his opinion:

"[I]t is medically probable that Mr. Lavin's work as a machinist requiring him to stand for prolonged periods of time on cement floors and more recently on wood slats permanently worsened [his] talonavicular arthritis that was no doubt initiated by an episode when he was 9 or 10 years old."

This is the only medical evidence linking claimant's condition to his employment.

■      On appeal, respondent argues first that, because it did not have an opportunity to depose or cross-examine Johnson, his opinion should be disregarded. Both the referee and the Board considered Johnson's opinion in reaching their decisions. At the hearing on March 11, 1980, the referee agreed to receive Johnson's report in evidence and to keep the hearing open until respondent had an opportunity to depose Johnson. On July 3, respondent requested that the record be closed without Johnson's report because "it does not appear that a time for the taking of Johnson's deposition can be arranged." It did not explain why it could not depose Johnson in that three and one-half months. On July 17, the referee informed the parties that he planned to close the case. He did so on August 4. In its motion for reconsideration, respondent claimed that a time to take Johnson's deposition could not be arranged with claimant's counsel. Nothing in the record shows that claimant's counsel posed any unreasonable obstacles to taking Johnson's deposition. Given how long this case was open and respondent's failure to explain adequately why it was prevented from deposing Johnson, we conclude that his report is properly part of the record before us. We turn now to the merits of claimant's claim.

■      In *Weller v. Union Carbide,* 288 Or 27, 35, 602 P2d 259 (1979), the court, in a similar case, held that a claimant must

"* * * prove by a preponderance of the evidence that (1) his work activity and conditions (2) caused a worsening of his underlying disease (3) resulting in an increase in his

pain (4) to the extent that it produces disability or requires medical services * * *."

before his claim will be found to be compensable.

Claimant's symptoms and pain here increased as a result of his job conditions, and his foot condition worsened during the time in question. The issue is whether claimant's having to stand on a hard surface for prolonged periods at work caused claimant's condition to worsen. On the basis of Dr. Johnson's opinion, we conclude that it did.

Respondent argues that there is no evidence that claimant's condition would not have progressed to its present level at all or at the rate it did if he had not worked for respondent. In fact, respondent argues, the evidence as a whole tends to show that the present level of claimant's foot condition would have been the same regardless of his job conditions. Dr. Donahoo's report states that claimant might eventually need to undergo surgery. Claimant's testimony, and Donahoo's medical progress notes indicate that even general activity causes claimant's pain in his foot. Respondent relies on *Henry v. SAIF,* 39 Or App 795, 593 P2d 1251 (1979), where we denied compensation to an employe who failed to offer proof that his foot condition, which he claimed was caused from continual standing on hard surfaces at work, would have been any different had he not been employed at all.

The distinction between this case and *Henry* lies in the unequivocal, unrebutted statement of Dr. Johnson that it is "medically probable" that claimant's job "permanently worsened" his condition. *Weller* calls for, and is satisfied by, just such testimony. Claimant has proved his claim.

Reversed and remanded to the Board with instructions to reinstate the referee's order.