Argued and submitted June 3, 1983, reversed and remanded
with instructions January 25, reconsideration denied March 9,
petition for review allowed April 17, 1984 (296 Or 829)
See 298 Or 452, 693 P2d 632 (1985)

In the Matter of the Compensation
of Kevin D. Wheeler, Claimant.

WHEELER,
*Petitioner,*

*v.*

BOISE CASCADE,
*Respondent.*

(81-06963; CA A26809)

675 P2d 499

Michael T. Garone, Portland, argued the cause for petitioner. With him on the brief was Jolles, Sokol & Bernstein, P.C., Portland.

Allan M. Muir, Portland, argued the cause for respondent. With him on the brief was Schwabe, Williamson, Wyatt, Moore & Roberts, Portland.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

BUTTLER, P. J.

### BUTTLER, P. J.

Claimant appeals from an order of the Workers' Compensation Board, which reversed the referee's opinion and order and held that claimant's rash was not a compensable condition.

Claimant began work at Boise Cascade in June, 1980. At that time, he had no rash of any kind. In October, 1980, while working as a green chain off-bearer with fir and hemlock, he developed a rash on his eyelids and arms. During the winter of 1980, the rash cleared up, leaving only scars on his arms. In March, 1981, while claimant was still working for Boise Cascade, the rash reappeared on the inside of his arms and on his neck and cheeks. In July, 1981, he missed work because of the rash. He still had the rash when he was laid off in December, 1981, after which time it disappeared.

Claimant, whom the referee found credible, testified that the only rash he had had prior to his employment by Boise Cascade developed in late 1979 or early 1980 when he was working as a glue spreader for Henderson Plywood. At that time, he developed glue poisoning, which resulted in a rash on one arm. He was treated by an injection, and the rash cleared in a few days. Although he continued in the same employment for one or two months, he remained asymptomatic.

Claimant was involved in high school football, basketball and track without ever having a rash of any kind. While in high school, he worked occasionally cutting weeds but developed no rash. He had also worked as a mason for three months in Haiti in extremely hot weather without developing a rash of any kind.

The medical evidence on causation is sparse. Dr. Stark, a dermatologist, stated that claimant had atopic dermatitis, which he defined as "an inherited predisposition to have sensitive skin." He stated: "I feel that his work activities have probably caused this problem to become symptomatic." Dr. Stark noted that persons having that predisposition normally react to heavy exercise and activity that cause them to perspire. He also noted as contributing factors claimant's use of "fairly harsh body soaps" and showering frequently because of the heavy perspiring he experienced at work. He

stated that claimant's skin condition could become symptomatic any time his skin became dry or had excess perspiration or if he wore clothing that was irritating to his skin. He said that it was "debatable" whether claimant's employment caused a worsening of the underlying pathological condition and that he thought that it probably did not. His final report states:

> "It is still my impression that Mr. Wheeler has a preexisting condition of atopic dermatitis and it is aggravated by working in an area where there is dust and debris as well as the opportunity for him to perspire profusely. * * * He was advised that he may well have to get out of the sawmill business."

It is apparent from the referee's opinion and order, and from the two opinions of the Board, that there is an underlying uncertainty as to whether it is necessary for a claimant to show that there was a worsening of his underlying preexisting condition in order to establish compensability. In *Weller v. Union Carbide,* 288 Or 27, 602 P2d 259 (1979), the court held that it was necessary. It applied that rule to deny compensability in *Weller* and in *Stupfel v. Edward Hines Lumber Co.,* 288 Or 39, 602 P2d 264 (1979), decided the same day.

However, in *Hutcheson v. Weyerhaeuser,* 288 Or 51, 56, 602 P2d 268 (1979), also decided the same day, the court said:

> "* * * If the 'mill conditions' caused temporary exacerbation of his preexisting chronic obstructive pulmonary disease, sinusitis and bronchitis so as to require medical services that would not have otherwise been necessary or if that exacerbation resulted in even temporary disability, this claim is compensable."

On that basis, the court there held the claim compensable with no requirement that there be a worsening of the underlying disease. The referee thought *Hutcheson* controlling, as did the Board dissenter. The Board majority thought *Weller* controls.

If there is a distinction between *Weller* and *Stupfel,* on the one hand, and *Hutcheson,* on the other, it is not articulated in the court's opinions. However, the opinions were written with all three cases in mind; we assume, therefore, that there is a distinction, and we believe that it lies in

the fact that in *Weller* and *Stupfel,* the claimants apparently were receiving medical attention before the claimed exacerbations of the symptoms at work. Therefore, the court held that the exacerbations were not compensable, because there was no worsening of the claimants' underlying conditions for which they were being treated. In *Hutcheson,* however, the claimant was asymptomatic and not being treated at the time of the exacerbation of symptoms at work. The court expressly stated that the mill conditions caused temporary exacerbation of the claimant's preexisting condition "so as to require medical services *that would not have otherwise been necessary * * *.*" 288 Or at 56. (Emphasis supplied.)

Here, the record does not support the *Weller* and *Stupfel* requirement that there be a worsening of the underlying condition. It does, however, indicate that claimant had been asymptomatic and was not receiving medical care for his disease until the conditions at the mill caused his symptoms to appear and to require medical treatment that would not otherwise have been necessary. The claim is compensable.

Reversed and remanded for reinstatement of the referee's opinion and order.